UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNEST E. JONES,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GENERAL ELECTRIC COMPANY, et al.,<br><br>　　　　Defendants. | Case No. 18-cv-07086-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Docket No. 23 |

## I. INTRODUCTION

Plaintiff Ernest Jones brings suit against his former employers General Electric Company ("GE"), Baker Hughes, a General Electric Company ("BHGE"), Lorenzo Simonelli, Matthias Heilmann, and Harry Elsinga (collectively, "Defendants"). The gravamen of Mr. Jones' complaint is that Defendants retaliatorily terminated him shortly after he objected to Defendants reneging on their promise to pay commission to his sales team, obstructed him from obtaining new employment after his termination, and discriminated against him on the basis of his race and national origin. Mr. Jones asserts claims for (1) breach of implied contract; (2) breach of the implied covenant of good faith and fair dealing; (3) employment discrimination on the basis of race under Title VII; (4) employment discrimination on the basis of national origin under Title VII; (5) termination for whistleblowing under California Labor Code Sections 98.6, 98.7, and 1102.5; (6) wrongful discharge in violation of public policy; (7) restitution, conversion, breach of fiduciary duty, and bailment; (8) intentional and negligent infliction of emotional distress ("IIED" and "NIED"); (9) defamation; (10) interference with prospective economic advantage; (11) retaliation in violation of 42 U.S.C. § 1981; (12) violation of the California Private Attorneys General Act ("PAGA"); and (13) violation of the Racketeer Influenced and Corrupt Organizations

Act ("RICO").

Pending before the Court is Defendants' motion to dismiss the First, Second, Seventh, Eighth, Ninth, Tenth, Twelfth, and Thirteenth causes of action in the complaint. Docket No. 23 ("Mot."). For the reasons discussed at the March 28, 2019 hearing on the motion, and the additional reasons below, the motion is **GRANTED in part and DENIED in part**.

## II. LEGAL STANDARD

For a plaintiff to survive a Rule 12(b)(6) motion to dismiss after *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), her factual allegations "must . . . suggest that the claim has at least a plausible chance of success." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1134-35 (9th Cir. 2014). In other words, the complaint "must allege 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility 'of entitlement to relief.'" *Id.*

## III. DISCUSSION

A. Breach of Implied Contract (First Cause of Action)

The elements of a breach of contract claim are: (1) the existence of a contract, (2) performance or excuse for nonperformance, (3) defendant's breach, and (4) damages. *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). "A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct." *Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (2008) (citation omitted).

Mr. Jones' complaint does not plead sufficient facts for the Court to plausibly infer that an implied contract was formed between Mr. Jones and Defendants. Because "the existence and terms of [an implied contract] are manifested by conduct," Cal. Civ. Code § 1621, a plaintiff must provide enough factual content to support the plausible inference that the implied contract existed.

2

*See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 982 (N.D. Cal. 2016). The complaint suggests that "a GE policy document" titled "The Spirit and the Letter" constituted an implied contract, Docket No. 1 ("Compl.") ¶ 51, but there is no other mention of this document in the complaint. The complaint provides no information regarding whether and how "The Spirit and the Letter" is implicitly incorporated into their employment agreement.

Accordingly, the breach of implied contract claim is **DISMISSED with leave to amend**.

B. <u>Breach of Implied Covenant of Good Faith and Fair Dealing (Second Cause of Action)</u>

Every contract contains an implied-in-law covenant of good faith and fair dealing. *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 683–84 (1988). "Simply stated, the burden imposed is that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. Or, to put it another way, the implied covenant imposes upon each party the obligation to do everything that the contract presupposes they will do to accomplish its purpose." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1393 (1990) (citations, quotations, and alterations omitted). Here, the alleged breach of the implied covenant of good faith and fair dealing is based on the covenant "implied by fact and law into the employment agreement between PLAINTIFF and GE/BHGE." Compl. ¶ 53. To state a plausible claim for breach of the implied covenant of good faith and fair dealing, it is sufficient that Mr. Jones "has alleged that he had a written contract with Defendant[s]"—his employment agreement—which imposed upon Defendants "a duty to execute the contract's purposes in good faith." *Daly v. United Healthcare Ins. Co.*, No. 10-CV-03032-LHK, 2010 WL 4510911, at *4 (N.D. Cal. Nov. 1, 2010).

Defendants contend that Mr. Jones' implied covenant claim is duplicative of his implied contract claim and should therefore be dismissed. To be sure, "when both causes of action cite the same underlying breach, the implied covenant cause of action will be superfluous with the contract cause of action." *Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 716 (N.D. Cal. 2014) (citing *Guz*, 24 Cal. 4th at 327). However, at this early stage of the proceedings, it cannot be said with certainty that Mr. Jones' implied covenant claim is superfluous because his implied contract claim has not been sufficiently pleaded. Further, Federal Rule of Civil Procedure 8(d)(2) allows a plaintiff to plead claims in the alternative. Accordingly, the motion to dismiss is **DENIED** with

3

respect to the implied covenant claim.

C. <u>Restitution, Breach of Fiduciary Duty, Conversion, and Bailment (Seventh Cause of Action)</u>

1. <u>Restitution</u>

Mr. Jones has opted to withdraw this cause of action. Opp. at 8 n.8. Accordingly, it is **DISMISSED with prejudice**.

2. <u>Breach of Fiduciary Duty</u>

To state a claim for breach of fiduciary duty, a plaintiff must allege: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach. *Pierce v. Lyman*, 1 Cal. App. 4th 1093, 1101 (1991). Mr. Jones' complaint falls short at the first element. The fiduciary duty goes "beyond . . . mere fairness and honesty" and requires the fiduciary to "undertake to act on behalf of the beneficiary, giving priority to the best interest of the beneficiary." *Comm. On Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 222 (1983). This means "a fiduciary relationship will be found only when an individual or entity has knowingly undertaken that high duty or when the law imposes the duty in special relationships such as agency, partnership or joint venture." *World Surveillance Grp. Inc. v. La Jolla Cove Inv'rs, Inc.*, 66 F. Supp. 3d 1233, 1235 (N.D. Cal. 2014) (citations omitted).

The complaint here alleges conclusorily that "[i]n the case of Oracle stock options, these assets were entrusted to BHGE for its prudent management as part of its recruitment of PLAINTIFF for employment." Compl. ¶ 63. This "do[es] not come close to alleging facts sufficient to impose the exceptional duties of a fiduciary on [Defendants]." *World Surveillance Grp.*, 66 F. Supp. 3d at 1236. Even accepting as true that Mr. Jones entrusted his Oracle stock options to BHGE, no facts are offered to show that Defendants "knowingly undert[ook]" the duty of putting Mr. Jones' interests before their own. *Id.* at 1235. Nor does the complaint allege a special relationship that would impose a fiduciary duty as a matter of law.

Accordingly, this claim is **DISMISSED with leave to amend** with more facts regarding the alleged fiduciary relationship.

### 3. Conversion

Conversion is the wrongful exercise of dominion over the property of another. *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1066 (1998). The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. *Id.* To satisfy the first element, "the plaintiff must identify some property in which he had property rights with which the defendant could, and did, interfere." *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 238 (2010) (emphases removed), *disapproved of on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011). Mr. Jones' complaint is deficient in this regard. It alleges only that "Corporate Defendants' conduct constitutes misappropriation and/or improper retention of financial benefits belonging to PLAINTIFF," without specifying what the financial benefits are. Compl. ¶ 63.

Accordingly, the conversion claim is **DISMISSED with leave to amend** with additional factual allegations going to the elements of the claim.

### 4. Bailment

"In an action for breach of a bailment contract, the bailor must prove that the agreement is a bailment contract, the property was deposited with the bailee, a demand was made for the property, and the bailee failed to return the property." *Needelman v. DeWolf Realty Co.*, 239 Cal. App. 4th 750, 762 n.6 (2015) (citing *Gebert v. Yank*, 172 Cal. App. 3d 544, 551–52 (1985)). As with Mr. Jones' conversion claim, the barebones allegations in the complaint are insufficient to support a bailment claim. The vague reference to a "stock swap" and "stock options," Compl. ¶ 23, do not establish that there was a bailment contract between Mr. Jones and Defendants. Moreover, Mr. Jones' brief states that he was "induced to sell" his Oracle stock to an unspecified party, Opp. at 9, which tends to undermine any inference that "the property was deposited with [Defendants]," *Needelman*, 239 Cal. App. 4th at 762 n.6.

Accordingly, Mr. Jones' bailment claim is **DISMISSED with leave to amend** to clarify the factual basis for the claim.

D.   Intentional and Negligent Infliction of Emotional Distress (Eighth Cause of Action)

The eighth cause of action is for "intentional and/or negligent infliction of emotional distress" caused by "Defendants' treatment of PLAINTIFF following the October 11 and 13 meetings and . . . of his termination and Defendant's continued thwarting of PLAINTIFF's ability to get another job." Compl. ¶ 65. Defendants move to dismiss this cause of action on several grounds.

1.   Exclusivity of Workers' Compensation Doctrine

First, Defendants argue that Mr. Jones' claims for emotional distress are barred by California's Workers' Compensation Act ("WCA"). The WCA provides for "[l]iability . . . in lieu of any other liability" for certain injuries incurred in the course of a plaintiff's employment, subject to certain statutory exceptions that neither party argues are applicable here. Cal. Lab. Code § 3600(a). Apart from those codified exceptions, "the right to recover compensation is . . . the sole and exclusive remedy of the employee or his or her dependents against the employer." *Id.* § 3602(a). The effect of the WCA is that, for injuries arising out of the course of employment, employees are "generally prohibited from pursuing any tort remedies against the employer or its agents that would otherwise apply." *Light v. Cal. Dep't of Parks and Recreation*, 14 Cal. App. 5th 75, 96 (2017).

The California Supreme Court has squarely held that "injuries resulting from the termination of employment may be included within the scope of workers' compensation" because termination decisions are "considered a normal and inherent part of employment." *Shoemaker v. Myers*, 52 Cal. 3d 1, 18 (1990) (citation omitted). Workers' compensation is thus the exclusive remedy for such injuries. *See id.* Under *Shoemaker*, to the extent Mr. Jones' alleged emotional distress was caused by either "the act of termination [or] the acts leading up to [his] termination," his claims are foreclosed by the WCA. 52 Cal. 3d at 20. However, discrimination is a well-established category of employer misconduct that is not considered a normal part of the employment relationship. *See, e.g.*, *Gantt v. Sentry Ins.*, 1 Cal. 4th 1083, 1101 (1992); *Smith v. Int'l Brotherhood of Electrical Workers*, 109 Cal. App. 4th 1637, 1658 (2003). Here, Mr. Jones' emotional distress claims are based in part on his allegations that Defendants' decision to

terminate him were tainted by racial and national origin animus. *See, e.g.*, Compl. ¶¶ 31, 55, 57. These claims are not barred by the WCA exclusivity doctrine. Nor is Mr. Jones' claim that Defendants continued to obstruct his ability to find new employment *after* his termination barred, since that injury was not "incurred in the course of [his] employment." Cal. Lab. Code § 3600(a).

2. IIED

Defendants next argue that Mr. Jones' IIED claim fails on the merits. To prevail on an IIED claim, a plaintiff must prove: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Avina v. United States*, 681 F.3d 1127, 1131 (9th Cir. 2012) (applying California law). The first prong requires the conduct to "be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Berkeley v. Dowds*, 152 Cal. App. 4th 518, 533 (2007) (citation and internal quotation marks omitted). Mr. Jones' complaint does not detail what about Defendants' conduct was extreme or outrageous, and conclusorily asserts that he "has suffered humiliation, embarrassment, emotional and mental anguish." Compl. ¶ 65. His opposition brief asks for leave to amend "to add details about the precise intentional and outrageous conduct to which he was subjected." Opp. at 10.

Accordingly, the IIED claim is **DISMISSED with leave to amend** to the extent it is premised on allegations of discrimination, and **DISMISSED with prejudice** otherwise.

3. NIED

NIED is simply a species of negligence. *See Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984 (1993). Mr. Jones' NIED claim, like his IIED claim, is based on Defendants' employment decisions. *See* Compl. ¶ 65. The problem for Mr. Jones is that the alleged employment decisions are intentional, not negligent, and "where the conduct alleged is intentional, it cannot be used as a basis for a negligent infliction of emotional distress claim." *Edwards v. U.S. Fid. & Guar. Co.*, 848 F. Supp. 1460, 1466 (N.D. Cal. 1994), *aff'd*, 74 F.3d 1245 (9th Cir. 1996). For similar reasons, "although discrimination claims are excluded from the workers' compensation bargain, an NIED claim may not be premised on discrimination because courts have

7

1 held that such discrimination is inherently 'intentional' conduct and therefore not within the scope

2 of an NIED claim." *Galarpe v. United Airlines, Inc.*, No. 17-CV-06514-EMC, 2018 WL 348161,

3 at *8 (N.D. Cal. Jan. 10, 2018).

Accordingly, Mr. Jones' NIED claim is **DISMISSED with prejudice**.

E. <u>Defamation (Ninth Cause of Action)</u>

"Defamation constitutes an injury to reputation; the injury may occur by means of libel or slander." *Shively v. Bozanich*, 31 Cal. 4th 1230, 1242 (2003). A defamation claim requires the plaintiff to demonstrate "(a) a publication that is (b) false, (c) defamatory, (d) unprivileged; and (e) that has a natural tendency to injure or that causes special damages." *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007). In particular, a plaintiff must "alleg[e] the substance of the defamatory statement" to state a claim for defamation, although he need not "state the exact words of the alleged slander." *Okun v. Superior Court*, 29 Cal. 3d 442, 458 (1981) (citations omitted). Here, the complaint fails to allege the substance of the defamatory statements. It refers to Defendants disseminating "unfounded allegations of unprofessional conduct," presumably about Mr. Jones, without further detail. Compl. ¶ 67. This is not enough. *See Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1313–14 (N.D. Cal. 1997) ("[G]eneral allegations of the defamatory statements . . . do[] not identify the substance of what was stated by the Defendants.").

Accordingly, Mr. Jones' defamation claim is **DISMISSED with leave to amend** to plead the substance of the allegedly defamatory statements.

F. <u>Interference with Prospective Economic Advantage (Tenth Cause of Action)</u>

The elements of a claim for intentional interference with prospective economic advantage are: "(1) an economic relationship between the plaintiff and some third person containing the probability of future economic benefit to the plaintiff; (2) knowledge by the defendant of the existence of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages to the plaintiff proximately caused by the acts of the defendant." *Blank v. Kirwan,* 39 Cal.3d 311, 330 (1985). With respect to the first element, "[t]he law precludes recovery for overly speculative expectancies by initially requiring proof the business relationship contained the *probability* of future economic

8

benefit to the plaintiff." *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 522 (1996) (emphasis in original) († citation and internal quotation marks omitted).

Mr. Jones' pleading is insufficient because it offers no factual allegations of prospective employment with identifiable third parties; his claim "overly speculative." *Westside*, 42 Cal. App. 4th at 522; *see, e.g.*, *Buxton v. Eagle Test Sys., Inc.*, No. C-08-04404 RMW, 2010 WL 1240749 (N.D. Cal. Mar. 26, 2010).

Accordingly, the interference with prospective economic advantage claim is **DISMISSED with leave to amend** and identify specific prospective employers interested in hiring Mr. Jones.

G. <u>PAGA Claims (Twelfth Cause of Action)</u>

Under PAGA, an aggrieved employee may bring a civil action to collect civil penalties for [California] Labor Code violations previously only available in enforcement actions initiated by the State's labor law enforcement agencies." *Caliber Bodyworks, Inc. v. Superior Court*, 134 Cal. App. 4th 365, 374 (2005). Defendants argue that Mr. Jones' PAGA claim fails because it was untimely and because he lacks standing to assert it.

A claim for civil penalties under PAGA is governed by a one-year statute of limitations. Cal. Code Civ. P. § 340(a). In addition, a plaintiff pursuing a PAGA claim must first exhaust his or her administrative remedies by providing notice of the claim to the California Labor and Workforce Development Agency ("LWDA"). Cal. Lab. Code § 2699.3(a)(1). PAGA exempts this administrative exhaustion period from the limitations period. *Id.* § 2699.3(d). In other words, a PAGA claim is timely if the plaintiff asserts it in a complaint filed within one year of the operative Labor Code violation or sends the LWDA notice letter within one year.

Mr. Jones filed his complaint and sent his PAGA notice to the LWDA on November 20, 2018, more than a year after he was terminated on November 7, 2017. Recognizing that his PAGA claim is untimely, Mr. Jones seeks to apply the doctrine of equitable tolling. Opp. at 13. On occasion, courts have equitably tolled the PAGA statute of limitations where the circumstances so warranted. *See, e.g.*, *Pinder v. Employment Dev. Dep't*, No. CIV. S-13-817 LKK/AC, 2013 WL 4482955, at *12 (E.D. Cal. Aug. 20, 2013); *Williams v. Veolia Transportation Services*, No. 08-CV-2582-GW (AGRx), 2012 WL 12960640, *4 (C.D. Cal. Jun. 28, 2012). However, in a

recent ruling, the California Court of Appeal appeared to hold that the doctrine of equitable tolling categorically does not apply to the statute of limitations in PAGA. *See Brown v. Ralphs Grocery Co.*, 28 Cal. App. 5th 824, 840–41 (2018) (holding that the legislative intent behind PAGA foreclosed the availability of equitable tolling), *review denied* (Feb. 20, 2019). Thus, there appears to be a split of authority as to whether Mr. Jones can seek to equitable tolling.

The Court need not resolve that question here, because Mr. Jones' PAGA claim also suffers from a standing defect. PAGA allows "an aggrieved employee" to bring a civil action "on behalf of himself or herself and other current or former employees" for Labor Code violations. Cal. Lab. Code § 2699(a). An "'aggrieved employee' means any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." *Id.* § 2699(c). The PAGA cause of action in the complaint alleges that "PLAINTIFF has articulated a claim *on behalf of his 31 former employees* (whether still employed or not) for the wages/ commissions due them by Corporate Defendants." Compl. ¶ 74 (emphasis added). His letter to the LWDA asserts the same. *See* Docket No. 23-1, Exh. B. Based on this allegation, Mr. Jones' does not have standing to bring a PAGA claim because it is premised on labor violations suffered by his employees, not himself. *See Holak v. K Mart Corp.*, No. 1:12-CV-00304-AWI-MJ, 2015 WL 2384895, at *5 (E.D. Cal. May 19, 2015) (finding that plaintiff lacked standing to prosecute PAGA claim "because none of the violations properly alleged in the PAGA claim . . . were committed against her").

Mr. Jones suggests in his opposition brief that the unpaid commissions due to his sales team also encompassed an incentive bonus due to him personally. Opp. at 14. But none of the paragraphs he cites specifically alleges that he was owed a bonus for the Rosneft deal. *See* Compl. ¶¶ 23, 31–34, 74. As noted above, the notice letter Mr. Jones sent to the LWDA, like the complaint, only appears to discuss commissions due to his sales team, and makes no mention of a bonus due to him. *See* Docket No. 23-1, Exh. B. As alleged, Mr. Jones has not given adequate notice of any PAGA claims that he has standing to bring.

Because the Court cannot ascertain at this juncture that amendment of Mr. Jones' PAGA claim would be futile, the claim is **DISMISSED with leave to amend**. However, the Court

reminds Mr. Jones' counsel that the PAGA claim, as with every other dismissed claim, should be reasserted in an amended complaint only it "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" in accordance with Federal Rule of Civil Procedure 11(b).

H. <u>RICO Claims (Thirteenth Cause of Action)</u>

RICO "provides a private civil action to recover treble damages for injury 'by reason of a violation of' its substantive provisions." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 481 (1985) (quoting 18 U.S.C. § 1964(c)). "To have standing under § 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate causation." *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (citations omitted).

Mr. Jones does not have standing to bring his RICO claim. The complaint alleges only that Defendants' "pattern of racketeering consists of more than two events of email correspondence and extortion through which 31 employees were forced to release their legitimate claims to compensation if they wished to remain employed by BHGE." Compl. ¶ 77. This refers to Mr. Jones' allegation that in January 2018—*after* he had been terminated—BHGE offered the Rosneft Deal team a "bonus" on the condition that each employee signed a "waiver agreeing that the 'bonus' constituted the sum total of the commissions/bonuses/wages due for the deal." *Id.* ¶¶ 40–42. Mr. Jones was never asked to sign such a waiver, and therefore cannot claim that he suffered any "injury to his business or property" as a result of Defendants' alleged scheme. *Canyon Cty.*, 519 F.3d at 972. Mr. Jones concedes that multiple aspects of his RICO claim "were not clearly stated in the Complaint," and requests leave to amend. Opp. at 14.

Accordingly, his RICO claim is **DISMISSED with leave to amend** to cure his standing and pleading defects. In doing so, Mr. Jones is reminded that his allegations must be pleaded with the particularity required to satisfy Rule 9(b), since his RICO claim sounds in fraud. *See Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **DENIED** with respect to Mr. Jones' claim for breach of the implied covenant of good faith and fair dealing, and **GRANTED** otherwise. Mr. Jones' claims for restitution, IIED (to the extent it is not premised on allegations of discrimination), and NIED are **DISMISSED with prejudice**. His claims for breach of implied contract, breach of fiduciary duty, conversion, bailment, IIED (to the extent it are premised on allegations of discrimination), defamation, interference with prospective economic advantage, violations of PAGA, and violations of RICO are **DISMISSED with leave to amend**. The amended complaint shall be filed within 30 days of the date of this Order.

As discussed at the March 28, 2019 hearing, it is further **ORDERED** that:

(1) The parties will meet and confer regarding the scope of the claims Plaintiff will assert in his amended complaint to ensure that the complaint complies with Rule 11(b) and that the claims are not peripheral to the factual allegations;

(2) The parties will produce initial discovery in accordance with General Order 71;

(3) The parties will meet and confer regarding search terms to use for discovery regarding electronically stored information;

(4) The parties will participate in a telephonic Case Management Conference with the Court on April 16, 2019 at 10:30 a.m.

This order disposes of Docket No. 23.

**IT IS SO ORDERED**.

Dated: April 15, 2019

EDWARD M. CHEN
United States District Judge